[Civil No. 2333. Filed November 6, 1925.]

[240 Pac. 465.] .

J. G. PETERSON, P. T. HURLEY, A. A. CAR-RICK, A. F. JONES and C. A. BALDWIN, as Members of and Constituting the Highway Commission of Maricopa County, State of Arizona, Appellants, v. L. H. CHALMERS, Appellee.

1. HIGHWAYS—WHERE FUNDS INSUFFICIENT TO CARRY OUT ENTIRE ROAD PROGRAM, HIGHWAY COMMISSION REQUIRED TO DESIGNATE ROADS TO BE IMPROVED.—Where fund voted by county, pursuant to Laws of 1917, chapter 31, was insufficient to carry out entire road building program, it was duty of highway commission to designate roads to be improved and to proceed with the improvements.

2. HIGHWAYS—PAVING BY CITY WITHOUT OBJECTION OF HIGHWAY COM-MISSION HELD EQUIVALENT TO DETERMINATION THAT ROAD IN QUESTION WAS NOT DESIGNATED TO BE IMPROVED BY HIGHWAY COMMISSION.—Where funds derived from bonds sold were insuffi-cient to complete entire road building program, and city proceeded without objection of highway commission to pave a street which was part of original county program, *held* that such action was equivalent to determination that road in question was not one designated to be improved by highway commission with available county funds.

3. HIGHWAYS—HIGHWAY COMMISSION NOT REQUIRED TO STOP CITY FROM PAVING ROAD, THOUGH IT WAS INCLUDED IN COUNTY ROAD BUILDING PROGRAM.—Highway commission *held* not required to have stopped city from paving street, originally included in road build-ing program, but which was not paved due to insufficiency of

funds, since city and county officials could not have foreseen that a subsequent bond issue would be passed to complete the program, and the fact that such a bond issue was subsequently voted did not give property owner, assessed by city for improvements, right to reimbursement from county, where road in question not included in program of subsequent bond issue.

4. HIGHWAYS—STATUTE PROVIDING FOR CO-OPERATION BETWEEN COUNTY AND CITY IN IMPROVING ROADS WITHIN CORPORATE LIMITS DID NOT EXTEND TO MONETARY CO-OPERATION AFTER ROAD FINISHED BY CITY ALONE UNDER OTHER STATUTES.—Under Laws of 1917, chapter 31, section 10, as amended by Laws of 1919, chapter 101, providing for co-operation between city and county highway commission in improving roads running through corporate limits, *held* it was contemplated that work was to be done in accordance with provisions therein and in accordance with plans of highway commission, and such statute does not contemplate monetary co-operation by county after work is completed by city alone, and hence, where city paved street under Improvement Act of 1912 (Laws 1912, c. 55) and Bond Act of 1919 (Laws 1919, c. 144), reimbursement could not be had from county by one whose property was assessed by city therefor.

5. HIGHWAYS—STATUTE RELATIVE TO CO-OPERATION BETWEEN CITY AND COUNTY HIGHWAY COMMISSION IN PAVING ROADS WITHIN CORPORATE LIMITS HELD NOT MANDATORY.—Under Laws of 1917, chapter 31, section 10, as amended by Laws of 1919, chapter 101, providing that parts of highways lying within corporate limits of any incorporated city or town may through co-operation be improved under provisions of this act, *held* that such act was not mandatory, inasmuch as there was nothing indicating any intention to deprive the city of its right to co-operation or not as it sees fit.

---

See (1) 29 **C. J.**, p. 587. (2) 29 **C. J.**, p. 590 (Anno.). (3) 29 **C. J.**, p. 590 (Anno.). (4) 29 **C. J.**, p. 590 (Anno.). (5) .29 **C. J.**, p. 590 (Anno.).

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. C. Struckmeyer, Judge. Judgment reversed.

Mr. Gene S. Cunningham, County Attorney, and Mr. C. M. Gandy, for Appellants.

Mr. Thomas G. Nairn, for Appellee.

McALISTER, C. J.—Under the provisions of chapter 31, Session Laws of Arizona of 1917, entitled, "An act providing for the creation of county highway commissions, and prescribing the powers and duties of such commissions," the board of supervisors of Maricopa county, on March 31, 1919, appointed a highway commission, which immediately thereafter entered upon the task of mapping out a paving program for the highways of that county. After its program was decided upon, an election was held at which bonds in the sum of $4,000,000 for the purpose of carrying it out were voted. The call for this election, which took place on May 17, 1920, carried with it a map of the program, and it included a highway known as McDowell Road upon the north side of which was lot 9 in Los Olivas Subdivided, an addition to the city of Phoenix. This lot fronts south on McDowell Road for a distance of 602 feet west of Third Street, and is now and was then owned by appellee herein, L. H. Chalmers.

The bonds were issued June 15, 1919, and the contract for paving the highways included in the program, with certain exceptions and as far as funds were available, was let by the commission on May 13, 1920; that part of McDowell Road fronting on appellee's property being embraced within the terms thereof. Construction began without delay, but it was discovered very soon thereafter that the funds realized from the bonds would not be sufficient to complete the program; hence an election for a second bond issue in the sum of $4,500,000 was ordered on November 30, 1920, and held on December 31st following; the result thereof being in favor of the issuance of the bonds. The notice of this election also carried with it a map showing upon what roads the funds realized from the sale of the bonds would be

applied, and in the main it disclosed that the purpose was to finish the original program with the exception of certain changes and alterations. An examination of it will reveal that among the changes was the elimination of McDowell Road between Central Avenue and Third Street on part of which lot 9, Los Olivas Subdivided, abuts.

When the election for the first issue of bonds was held, this lot was outside the city limits,. but on November 10, 1919, Phoenix extended its northern boundary in such a way as to make it a part thereof, and on February 18, 1920, the city commission adopted a resolution of intention to pave McDowell Road from Central Avenue to Third Street. In pursuance of this resolution it did this paving during the following summer or fall, the record disclosing that it was completed before December 22, 1920, and that an improvement bond for $4,500.43 against said lot 9 was issued by the city on December 28, 1920. This, according to the testimony, was the reason why McDowell Road from Central Avenue to Third Street was omitted from the map accompanying the call for the second election.

Section 10 of chapter 31, *supra,* prohibited the improvement under that act of any highway lying within the limits of any incorporated city or town, but authorized the city or town itself, when such a highway passed through it, to improve that portion of it within its limits by issuing bonds therefor the same as for public improvements. But in March, 1919 (Laws 1919, c. 101), the succeeding legislature amended section 10 in such a way that the highway commission could, through co-operation with the city authorities, pave the portion of a highway running through an incorporated town. As amended, this section reads:

"10. That part of the highway lying within the corporate limits of any incorporated city or town may through co-operation be improved under the provisions of this act in the same manner as if it was lying without the corporated limits of any incorporated city or town; provided, that such road shall not exceed in extent one direct route through any city or town."

The paving laid by the highway commission was eighteen feet in width, that is, nine feet on either side of the center of the highway, and appellee testified that, when he left Phoenix in March, 1920, for Chicago on account of illness, he assumed it would pave Mc-Dowell Road between Central Avenue and Third Street, but some time after his return the latter part of that year and the issuing of a bond against his property by the city he learned that it had not done so. Thereupon he took up with the highway commission the matter of reimbursing him for the amount he would be compelled to pay the city for paving the strip just north of the center line nine feet in width by 602 feet in length, but the commission declined to pay him upon the ground that it could not legally do so, whereupon he filed suit for the amount he claimed, $1,789.66, with interest, and obtained judgment for $1,481.33 to be paid from the proceeds of the Maricopa county highway bonds. It is from this judgment that the highway commission appeals.

At the time of filing the complaint and upon the allegations thereof that the paving program was then nearly completed, and that when it should be finished there would remain on hand from said bond issues a balance of several hundred thousand dollars, which appellants, unless restrained by the court, would turn over to the state treasurer of Arizona or the board of supervisors of Maricopa county, to be expended on

other highways, the court entered an order restraining appellants from expending or in any way disposing of the sum of $1,789.66 of these funds until the final disposition of this suit.

Several errors are assigned, but they are not separately argued. The propositions relied on for a reversal, however, may be considered under the assignment that the judgment is not supported by the evidence and is contrary to law. The contract under which the county paving was done required the successful bidders, Twohey Brothers, to construct and pave to the satisfaction of the Maricopa county highway commission the roads and highways constituting the entire program, with certain exceptions, "so far as funds to pay for the same under this contract now are or hereafter may become available therefor," and provided also that the "order of construction . . . shall be designated by the highway commission to the said contractor from time to time during the progress of the work." Very soon after this contract was awarded it was realized that this was the situation: The county had voted $4,000,000 in bonds for the purpose of paving about three hundred miles of highway, and this sum of money was sufficient to take care of only about one-half this mileage. The highway commission had been instructed to do the work, and could not decline to proceed with it because the funds available would not complete it; hence it was clearly its duty to designate which roads should be paved with these funds; and the record fails to disclose that the highway in front of appellee's property was so designated. It does appear, however, that, when the city began paving this street, which was some months after the contractor had started on the county program, the highway commission made no objection to its doing so, and this, it seems to us, was equivalent to determin-

ing that it was not one of the roads to be so desig-
nated. Such is evidently the way it appeared to the
city authorities, for undoubtedly they would not have
placed the expense of paving this eighteen-foot strip
on the abutting property owners if they had not been
convinced that the highway commission was not going
to bear it.

Appellee contends, however, that, since this street
was included in the county program, the highway com-
mission should have stopped the city from paving it.
If there had been at that time funds available to take
care of the entire program, this claim would be cor-
rect, provided, of course, the further contention that
section 10, chapter 31, Laws of 1917, as amended, is
mandatory is well founded. But, in view of the fact
that the lack of funds for the entire program made it
necessary that the commission determine upon which
part of it those available should be used, it cannot be
sustained. Both the highway commission and the
city acted, as was their right, upon conditions as they
then existed, and it cannot be held that they should
have looked into the future and have foreseen that a
second bond issue would be voted and funds for the
entire program thus made available. The paving
had been completed before this election was held, and,
inasmuch as the part of McDowell Road in question
did not appear on the map accompanying the notice
thereof, the fact that the funds realized from the
bonds voted at that time were sufficient to complete
the program as originally planned is not a factor to
be considered in determining whether the commission
should have paved this street from the proceeds of
the first bond issue. And while it is true, as con-
tended by appellee, that the second bonds were voted
in the main for the purpose of completing the pro-
gram already started, yet the fact that this particular
street did not appear upon the map showing upon

what roads the money from that issue would be used discloses clearly that it had been intentionally eliminated from the consideration of the voters.

It is immaterial, however, so far as appellant's duty to pave this street was concerned, whether the provisions of section 10, *supra,* as amended, are mandatory or merely permissive in meaning, because the effect of holding that they are binding would be merely to place the portion of the highway in the city limits upon the same basis as the rest of the county program. If the funds were not sufficient to take care of the entire program, and it was the duty of the highway commission to designate upon which highways those available should be used, neither appellee nor anyone else could have compelled the commission by mandamus to use them upon any particular portion of the program. Its discretion to decide which highways should be paved with these funds could not be thus controlled. Neither, under such conditions, could appellee have enjoined the city from proceeding with the paving upon the ground that it was doing something the law had authorized the highway commission, and no one else, to do, though an injunction against it at the instigation of the highway commission would have lain, provided the latter had decided to designate the street in question as one of those to be paved with the funds then available, and the provisions of section 10, *supra,* were mandatory.

After learning that the city had paved this street, appellee sought reimbursement from the highway commission, but it refused upon the ground that, since the work was neither done by it nor in accordance with the provisions of chapter 31, *supra,* it could not legally pay him. It was appellee's contention, however, that, even though the commission did not do the paving, it should have paid him what it would

have cost the commission to do the work, and its action in so doing would have amounted to co-operation within the meaning of that term as used in section 10, *supra;* in other words, the commission could have co-operated on a money basis after the work had been completed. Under this section, however, a highway lying within the corporate limits of a city or town may be improved only "under the provisions of this act," and "in the same manner as if it were lying without" such limits, and paving done by the city under the "Improvement Act of 1912" (Laws 1912, c. 55) and the "Bond Act of 1919" (Laws 1919, c. 144) is not done under the provisions of chapter 31, *supra.* Section 10 clearly contemplates that, if such work is done by co-operation at the expense of the highway commission, it shall be under its supervision and in accordance with its plans and specifications, and, if it is done otherwise than under the provisions of chapter 31, co-operation either before it is begun or after it is completed is not authorized.

Appellee relies largely upon the contention that the provisions of section 10, *supra,* are mandatory; that under them it was appellant's duty to pave this road; and that, inasmuch as it did not do so, but stood by and permitted the city to pave it, it should either pay appellee what it would have cost the highway commission to do the work or reduce the bond issued by the city against his property to that extent. There is no question but that it would have been appellant's duty to do this work if it had had the funds and the co-operation of the city could have been procured. We are of the opinion, however, that by the words "may through co-operation be improved" the legislature intended no more than to direct the commission to pave such a highway when it and the city authorities were able to agree upon the manner in which it should do the work. To say that "may," as used

in this expression, means ''shall'' would be equivalent to directing the highway commission to do something which the words used in connection therewith, ''through co-operation,'' direct it to do only on condition that another party agrees to it, and there is nothing in the act indicating an intention to deprive the city of its right to co-operate or not as it sees fit; in fact, there could not be and still preserve the meaning intended, for such a provision would have the effect of nullifying it.

Inasmuch, however, as there were not sufficient funds available for the entire program, and the portion of McDowell Road in question had not been designated as one of those to be paved with the funds on hand, there was no occasion for the commission to seek the co-operation of the city authorities; and, since no one could foresee that other bonds would be voted, there was no reason why it should have attempted to stop the city from paving it under the Improvement and Bond Acts, as was its right; and, since the work was completed before the second issue of bonds was voted and the provisions of section 10, *supra,* prevented co-operation upon a money basis after it was finished because done under other provisions of the statute than chapter 31, no useful purpose could have been served by placing it on the map accompanying the notice of that election. Certainly no one would contend that the commission should have had the paving put in by the city—which was admittedly good—removed merely for the purpose of itself re-laying it.

We conclude, therefore, that the judgment is not supported by the evidence and is contrary to the law; hence the case is remanded, with directions to dismiss the action.

ROSS and LOCKWOOD, JJ., concur.